24 CV 04164

RIEMER HESS LLC
Attorneys for Plaintiff
275 Madison Avenue, 26th Floor
New York, New York 10016
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE ROE (a fictitious name),<br><br>    Plaintiff,<br><br>  -against-<br><br>FIRST UNUM LIFE INSURANCE COMPANY,<br><br>    Defendant. | Index No. 24-mc-221<br><br>**COMPLAINT**<br><br>ECF CASE |

Plaintiff Jane Roe, by her attorneys Riemer Hess LLC, complaining of unlawful conduct by Defendant First Unum Life Insurance Company ("Unum"), alleges:

1. This is an action for benefits arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., and to recover prejudgment interest, attorneys' fees, and costs.

2. This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and Unum resides in or may be found in this District.

**ROE'S PARTICIPATION IN THE LONG TERM DISABILITY PLAN**

4. Roe is a highly accomplished 48-year-old woman who last worked as a Manager of Advanced Industries Digital Practice at McKinsey & Company ("McKinsey").

5. Roe's date of birth is July 24, 1975.

6.      At all relevant times, Roe was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in McKinsey's group long term disability insurance plan under Policy Number LTD 451355-011 (the "LTD Plan Document"), which was underwritten by Unum, with a policy effective date of July 1, 1987.

7.      McKinsey provided Roe with long term disability insurance coverage under the LTD Plan Document.

8.      At all relevant times, Unum is and has been the claims administrator of the LTD Plan Document within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

9.      At all relevant times, Unum is and has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

10.     At all relevant times, the LTD Plan Document is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

11.     Long term disability benefits under the LTD Plan Document are insured by Unum.

12.     The LTD Plan Document defines "disability" and "disabled" to mean that because of injury or **sickness**:

> 1. you cannot perform each of the material duties of your regular occupation; or
> 2. you, while unable to perform all of the material duties of your regular occupation on a full-time basis, is:
>     a. performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and
>     b. earning currently at least 20% less per month than your indexed pre-disability earnings due to that same injury or sickness.

13.     Unum determined Roe is covered as a "Class/Group: Class 1" employee.

14.     The LTD Plan Document defines Class 1 employees as "all employees in offices designated as eligible by the Employer, including employees of Orpheus, excluding non-partner group members of the Netherlands branch and any temporary or seasonal employee."

15.     For claimants who are under the age of 60 at the time of disability, the LTD Plan Document defines the Maximum Benefit Period of Payment to be until the age of 65.

### ROE'S PARTICIPATION IN THE WAIVER OF PREMIUMS

16.     As an employee of McKinsey, Roe was also provided with a waiver of premiums under the LTD Plan Document.

17.     Roe was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the LTD Plan Document.

18.     At all relevant times, the waiver of premium is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

19.     At all relevant times, Unum is and has been the claims administrator of the LTD Plan Document within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

20.     Waiver of premium benefits under the LTD Plan Document are insured by Unum.

21.     At all relevant times, Unum is and has been a fiduciary under the LTD Plan Document within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

22.     The LTD Plan Document defines eligibility for waiver of premium as: "Premium payments for an employee are waived during any period for which benefits are payable. Premium payments may be resumed following a period during which they were waived."

### ROE'S REGULAR OCCUPATION

23.     Roe's Regular Occupation (hereinafter the "Occupation") was as Manager of Advanced Industries Digital Practice for McKinsey, a global management consulting firm.

24.     Roe's Occupation is very demanding and stressful. Her Occupation requires high-level mental and social demands, as detailed below.

25.     The duties outlined in paragraphs 29-31 were assessed by Unum's vocational reviewer, Rusty Peavy, MS, CRC, Sr. VRC.

26.     The Occupation cannot be performed within a predictable, nine-to-five schedule.

27.     The Occupation requires the employee to work long and unpredictable hours – often extending late into the night and/or on weekends.

28.     The Occupation requires the performance of time-sensitive tasks completed on demand to meet the expectations of the employees, employer, and its customers.

29.     The material duties of the Occupation include:

    a.     <u>Collaborates</u> with technical and non-technical team members to understand customer inquiries and requirements.

    b.     <u>Analyzes</u> business and operational needs by engaging with customers, employees, and managers to identify and address issues, areas of improvement and high-priority projects.

    c.     <u>Maintains</u> client and customer relationships by providing high-quality customer service and responding to inquiries accurately and promptly. Provides management teams and stakeholders with updates on business goals, ongoing issues, new inquiries, and overall customer satisfaction and retention.

    d.     <u>Analyzes</u> effectiveness of current business solutions strategy and reports findings to management teams and stakeholders. Identifies and supports process improvement initiatives and programs.

    e.     <u>Assists</u> in the development of training programs, presentations, and manuals.

    f.     May <u>monitor</u> a Customer Relationship Management system to track and organize tickets related to customer issues. May provide ad hoc reporting as needed.

    g.     May <u>recruit, hire, train staff, evaluate</u> employee performance, and <u>recommend or initiate promotions</u>, transfers, and disciplinary action.

30.     The physical demands of the Occupation include:

    a.     <u>Sedentary</u> - Mostly sitting; may involve standing or walking for brief periods of time; lifting; carrying, pushing, pulling up to 10 pounds occasionally; occasionally reaching (primarily at desk level); handling, fingering, keyboard use.

    b.     <u>Travel</u> - The occupation requires travel via air/automobile.

31.     The mental/cognitive demands of the Occupation specify it is skilled work requiring:

    a.     <u>Directing, controlling, or planning activities of others;</u> work situations that involve accepting responsibility for formulating plans, designs, practices, policies,

methods, regulations, and procedures for operations or projects; negotiating with individuals or groups for agreements or contracts; and supervising workers to implement plans and control activities.

b.  <u>Making judgments and decisions;</u> work situations that involve solving problems; making evaluations; or reaching conclusions based on subjective or objective criteria, such as the five senses, knowledge, past experiences, or quantifiable or factual data.

c.  <u>Dealing with people;</u> work situations that involve interpersonal relationships in a job setting beyond giving and receiving work instructions.

d.  <u>Attaining precise set limits, tolerances, and standards;</u> work situations that involve adhering to and achieving exact levels of performance; using precision measuring instruments, tools, and machines to attain precise dimensions; preparing exact verbal and numerical records; complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specified standards.

## THE *DE NOVO* STANDARD OF REVIEW

32.  The LTD Plan Document does not contain language granting Unum discretionary authority to determine eligibility for benefits or to interpret the terms of the LTD Plan.

33.  Unum also provided a purported plan document dated June 2020. Such document includes a discrete Plan Document portion ("Plan Document Portion") and a separate attached document, titled "Additional Summary Plan Description Information" ("SPD Portion") (together hereinafter the "Plan Document with SPD").

34.  This Plan Document with SPD is inapplicable to Roe because Roe's date of disability is April 4, 2020. Her date of disability predates the date of such document.

35.  The SPD Portion includes language purporting to grant Unum discretionary authority to determine eligibility for benefits or to interpret the terms of the LTD Plan.

36.  The discretionary language in the SPD Portion is not an effective delegation of discretionary authority.

37.  The SPD Portion is not located within or a part of the Plan Document Portion.

38.  The Plan Document Portion does not incorporate the SPD Portion.

39.     The Plan Document Portion and the SPD Portion are separate documents as indicated by their separate BATES stamped page numbering:

     a.   The Plan Document Portion (corresponding with the table of contents): LC-IND-1; LC-CC-1; LC-S-1; LC-PO-1 through 3; LC-DEF-1 through 3; LC-EFF-1; LC-BEN-1 through 4; LC-TERM-1 through 2; LC-GI-1 through 2.

     b.   The SPD Portion: ADDLSUM-1 through 6.

40.     Any discretionary language contained in the SPD Portion is not part of the LTD Plan Document Portion.

41.     The LTD Plan Document, policy number 451355, is the same policy number of the plan document used in *Forman v. First Unum Life Ins. Co.*, 469 F. Supp. 3d 367, 368 (E.D. Pa. 2020).  In *Forman,* the Court ruled that the discretionary language, written and found only in the SPD, is not effective and the appropriate standard of review is *de novo.  Id.*

42.     During the claim and administrative review process, Unum failed to comply with the Department of Labor's claims procedure regulations, and its failure to comply was neither inadvertent nor harmless.

43.     Upon information and belief, Unum has not adopted claim procedures in accordance with the Department of Labor regulations.

44.     Unum failed to provide a full and fair review because Unum failed to strictly adhere to all the requirements of ERISA's claims procedure regulations at 29 C.F.R. § 2560.503-1(h)(4).

45.     Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503- 1(h)(4) was not de minimis.

46.     Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503- 1(h)(4) was not for good cause.

47.     Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503- 1(h)(4) was not due to matters beyond the control of Unum.

48. Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503-1(h)(4) was not in the context of an ongoing good-faith exchange of information between Unum and Roe.

49. Unum's failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503- 1(h)(4) caused and is likely to cause prejudice or harm to Roe.

50. Unum's failure to provide a full and fair review adversely affected the development of the administrative record.

51. Upon information and belief, Unum's determination and failure to strictly adhere to the requirements of 29 C.F.R. § 2560.503-1(h)(4) was arbitrary and capricious because Unum failed to follow the DOL regulations, as set forth and described above in paragraphs 32 through 50.

52. As a result, *de novo* review applies to Roe's LTD claim.

## ROE'S BACKGROUND AND MENTAL ILLNESS DIAGNOSIS

### Unum Approved Roe's Disability Claims

53. Roe suffers from serious mental illnesses, including bipolar disorder; panic disorder; post-traumatic stress disorder ("PTSD"); and depression.

54. Due to increasing psychiatric symptoms, Roe ceased working as a Manager of Advanced Industries Digital Practice on or about April 4, 2020.

55. Unum approved Roe's claim for Short Term Disability ("STD") until about October 15, 2020.

56. Roe also filed a claim for Long Term Disability ("LTD") benefits and a claim for waiver of premium benefits, alleging she became disabled on April 4, 2020 (together, the "Claims").

57. On February 16, 2021, Unum approved Roe's claim for LTD benefits, stating, "We have approved your client's benefits because they are unable to perform the material and substantial duties of their regular occupation as defined in the policy."

58.     Unum began paying Roe LTD benefits as of October 16, 2020 (following the LTD Plan's 180-day unpaid waiting period).

59.     Unum approved Roe's waiver of premium benefits as of November 1, 2020.

60.     Since her date of disability, on April 4, 2020, Roe continued to seek appropriate treatment for her conditions and continued to provide updated information as requested by Unum.

61.     Unfortunately, since her date of disability, April 4, 2020, to present, Roe's condition has not improved, and her psychiatric symptoms have worsened.

62.     On April 21, 2022, the Social Security Administration determined Roe as disabled under the rules of the Social Security Administration as of March 15, 2020.

**Unum Terminated Roe's Long Term Disability Benefits**

63.     Unum terminated Roe's LTD benefits as of January 5, 2023, by letter dated February 8, 2023.

64.     Unum terminated Roe's waiver of premium benefits as of January 5, 2023, by letter dated January 5, 2023, attached to the LTD termination of benefits letter dated February 8, 2023.

65.     Unum's LTD benefit termination letter states: "Based on our review, the information in Roe's file does not support she would be precluded from performing the mental/cognitive demands of her occupation. Roe no longer meets the policy definition of disability, and her claim has remained closed as of January 06, 2023."

66.     Unum's waiver of premium benefits termination letter states: "The waiver of your client's Long Term Disability premium ends on the date their benefits end."

67.     Unum determined the mental/cognitive demands of Roe's occupation "consist of skilled work requiring directing, controlling or planning activities of others: making judgments and decisions; dealing with people; and attaining precise set limits, tolerances and standards."

68.     Unum erroneously terminated Roe's benefits based on the unreliable, unsupported, and incomplete opinions of Lawrence Burstein, PhD, Medical Consultant (clinical psychology), Unum, and Mark Schoeder, MD, psychiatry consultant.

69.     Neither Dr. Burstein nor Dr. Schroeder examined Roe.  They only conducted a review of the paper file.

70.     Unum's reliance on Dr. Burstein's and Dr. Schroeder's non-examining paper review reports was unreasonable.

The Paper Review Report of Dr. Burstein

71.     Dr. Burstein's January 24, 2023 paper review of Roe's file states:

Although the claimant and her providers have reported that she is significantly impaired in her ability to function, from a behavioral health perspective, they have not provided observations of her presentation or formal mental status examination findings to support the complaints and impressions. As a result, the records do not support the presence of impaired functioning from a behavioral health perspective. The records from Dr. Muneses indicate that the frequency of visits has decreased from monthly to quarterly. This is confirmed in his recent letter to me. The decreasing frequency of visits is not consistent with the severity of symptoms reported. It is noted that Dr. Muneses has not observed the claimant in over a year, as he treats her via telephone. It would be expected that someone exhibiting the severity of symptoms reported by the providers would be seen in person, or at least via video, on occasion.

72.     Unum relied on Dr. Burstein's report in making its decision to terminate benefits.

73.     Unum's reliance on the non-examining report of Dr. Burstein was unreasonable.

74.     Dr. Burstein non-examining report is unreliable because:

a.   Dr. Burstein opinion was infected by conflict and bias;

b.   Dr. Burstein's conclusions lack foundation and are conclusory;

c.   Dr. Burstein failed to consider Roe's lack of significant improvement and suicidal ideation;

d.   Dr. Burstein never examined Roe in-person, which is particularly relevant, given the complexity of Roe's conditions and that he criticized Dr. Muneses for having telephone visits;

10

   e.   Dr. Burstein "cherry-picked" from Roe's records, only acknowledging some improvement but ignoring persistent or worsened symptoms;

   f.   Dr. Burstein failed to consider all relevant information, including Roe's relevant own occupational demands; and

   g.   Dr. Burstein's conclusions were inconsistent with the weight of the evidence.

The Paper Review Report of Dr. Schroeder

75.   Dr. Schroeder's January 31, 2023 paper review of Roe's file states:

[T]he available evidence did not support AP opinions about behavioral health restrictions/limitations during the timeframe in question. Instead, I concurred with the BH MC opinion. The claimant's self-report of inability to perform full occupational duties because of depression, anxiety, mood instability, PTSD symptoms, and cognitive impairment is not supported by the weight of the clinical evidence in the claim file during the timeframe in question.

76.   Dr. Schroeder did not assess whether Roe had any work restrictions or limitations.

77.   Unum relied on Dr. Schroeder's report.

78.   Unum's reliance on the non-examining report of Dr. Schroeder was unreasonable.

79.   Dr. Schroeder's non-examining report is unreliable because:

   a.   Dr. Schroeder's opinion was infected by conflict and bias;

   b.   Dr. Schroeder's conclusions lack foundation and are conclusory;

   c.   Dr. Schroeder failed to consider the severity of Roe's condition, including suicidal ideation and the lack of significant improvement;

   d.   Dr. Schroeder never examined Roe in-person;

   e.   Dr. Schroeder mischaracterized Roe's symptoms as self-reported;

   f.   Dr. Schroeder's conclusions were inconsistent with the weight of the evidence.

**ROE FILED AN ADMINISTATIVE APPEAL**

80.   Roe filed a timely administrative appeal of Unum's termination of LTD and waiver of premium benefits under the Plan by letter dated August 4, 2023 (the "Appeal").

11

81.     On appeal, Roe submitted additional evidence demonstrating that she satisfies the
definition of disability under the Plan since her date of disability of April 4, 2020 through January 5,
2023, when her benefits were wrongfully terminated, and through present. Specifically, due to her
symptoms, Roe's medical evidence demonstrates that she cannot:

    a.   Meet the high-level metal and stressful demands of her regular occupation;

    b.   Cannot tolerate prolonged social interactions with others, including coworkers,
supervisors, and business contacts; and

    c.   Cannot reliably complete a normal workday or workweek on a sustained and
consistent basis.

82.     Roe also argued Unum's termination of benefits was incorrect and unsupported
because Unum relied on the unreliable opinions of its medical paper reviewers, who incorrectly
concluded she can perform the material and substantial duties of her regular occupation.  The paper
reviewers' opinions are unreliable because: 1) the paper reviewers cherry-picked and mischaracterized
evidence from the medical file and 2) the paper reviewers incorrectly concluded that Roe has no
relevant restrictions/limitations, despite all evidence indicating otherwise.

83.     Unum's termination also denied Roe a full and fair review by failing to identify what
specific information was necessary and/or missing to perfect her appeal.

84.     With her appeal, Roe submitted substantial new evidence further demonstrating that
she did not experience significant improvement with ongoing treatment; her conditions continued to
render her disabled.  Roe's new evidence included:

    a.   Repeat Neuropsychological Evaluation by Wilfred van Gorp, Ph.D., ABPP, dated
May 17, 2023, which objectively revealed Roe's psychiatric state and some testing
results have worsened since her previous Neurological Evaluation with Dr. van
Gorp on December 2, 2020.  Unum had approved benefits based on prior medical
evidence and testing and since then Roe's psychiatric condition has worsened,
despite benefits being terminated February 8, 2023;

    b.   Narrative Letter from Roe's psychiatrist, Dr. Todd Muneses, dated July 6, 2023,
where he concluded that "[Roe] is unable to work in her occupation or any other
occupation";

     c.  Narrative Letter from Roe's therapist James Abrams, LCSW, dated June 27, 2023, which concludes "[a]ny improvement in symptoms has been temporary and not to the level of a return to work on a consistent and reliable basis";

     d.  Dr. Muneses' treatment records dated January 21, 2023 through May 25, 2023;

     e.  Treatment Summary of James Abrams, LCSW, dated July 17, 2023;

     f.  Signed Statement of Roe, dated August 4, 2023;

     g.  Witness Statement of Carroll Roe, dated July 2023; and

     h.  Witness Statement of Mr. Brandon O'Hara.

**Unum's Review of Roe's Appeal**

85.    During Unum's appeal review, Unum obtained a report from two other non-examining paper reviewers, Peter Brown, M.D. and Malcom Spica, Ph.D., who both concluded Roe has no limitations or restrictions from her diagnosed conditions precluding her from work.

86.    By letter dated October 4, 2023, Unum provided copies of the above-mentioned reports for Roe to review and respond to.

87.    By letter dated November 16, 2023, Roe submitted additional evidence in support of her appeal and in rebuttal to the paper reviewers, Dr. Spica and Dr. Brown, including:

     a.  Social Security Disability Claim File;

     b.  Independent Medical Exam Report from Dr. Talei, dated October 15, 2023;

     c.  Narrative Letter from Dr. van Gorp, dated October 15, 2023; and

     d.  Narrative Letter from James Abrams, LCSW, dated October 27, 2023.

88.    By letter dated December 11, 2023, Unum provided copies of addendum responses from the paper reviewers, Dr. Spica and Dr. Brown, for Roe to review and respond to.

89.    By letter dated December 20, 2023, Roe subsequently submitted additional evidence in support of her appeal and as a rebuttal to paper reviewers, Dr. Spica and Dr. Brown, including FDA printouts of Roe's medications.

90. Dr. Brown's non-examining peer review and addendum report are unreliable because:

a. Dr. Brown wrongly stated that Roe's symptoms were well controlled and that she has the ability to deal with interpersonal stressors, such as the end of marriage and the reevaluation of her disability status, which is inconsistent with her providers' assertions of severe symptoms;

b. Dr. Brown wrongly concluded that restrictions and limitations due to a psychiatric condition were not supported as of January 6, 2023;

c. Dr. Brown failed to consider Roe's symptoms remain unpredictable, with manic and depressive episodes that would prevent her from working on a reliable and consistent basis;

d. Dr. Brown's opinion was infected by conflict and bias;

e. Dr. Brown's conclusions lack foundation and are conclusory;

f. Dr. Brown never examined Roe in person;

g. Dr. Brown improperly dismissed evidence as not time relevant;

h. Dr. Brown failed to consider all relevant information, including how Roe's symptoms would affect her relevant own occupational demands;

i. Dr. Brown failed to consider the severity of Roe's condition, including suicidal ideation and the lack of significant improvement;

j. Dr. Brown mischaracterized Roe's symptoms as self-reported;

k. Dr. Brown improperly ignored the severe emotional results of Roe's May 2023 neuropsychological evaluation, only commenting on how she did not have a neurocognitive disorder;

l. Dr. Brown improperly concluded that Roe's treatment and polypharmacy regimen were inconsistent with a severe psychiatric condition;

m. Dr. Brown failed to consider the relevant evidence from Roe's Social Security Administration claim file, which established she meets and continues to meet their higher standard of disability[1];

n. Dr. Brown failed to consider the side effects Roe was experiencing from her medications; and

---

[1] Social Security's definition of disability under 20 C.F.R. § 416.905 is more extensive, requiring the inability to perform any substantial gainful activity, whereas under Roe's policy, she must only prove "the insured cannot perform each of the material duties of her regular occupation…" (*See* Plan).

       o.   Dr. Brown's conclusions are inconsistent with the weight of evidence.

91.    Dr. Spica's non-examining peer review and addendum report are unreliable because:

       a.   Dr. Spica wrongly stated that Roe's symptoms were well controlled and that she is able to deal with interpersonal stressors, such as the end of marriage and the reevaluation of her disability status, which is inconsistent with her providers' assertions of severe symptoms;

       b.   Dr. Spica wrongly concluded that restrictions and limitations due to a psychiatric condition were not supported as of January 6, 2023;

       c.   Dr. Spica failed to consider Roe's symptoms remain unpredictable, with manic and depressive episodes that would prevent her from working on a reliable and consistent basis;

       d.   Dr. Spica's opinion was infected by conflict and bias;

       e.   Dr. Spica's conclusions lack foundation and are conclusory;

       f.   Dr. Spica never examined Roe in person;

       g.   Dr. Spica failed to consider all relevant information, including how Roe's symptoms would affect her relevant own occupational demands;

       h.   Dr. Spica improperly ignored the severe emotional results on the May 2023 neuropsychological evaluation, only commenting on how she did not have a neurocognitive disorder;

       i.   Dr. Spica failed to consider the severity of Roe's condition, including suicidal ideation and the lack of significant improvement;

       j.   Dr. Spica mischaracterized Roe's symptoms as self-reported;

       k.   Dr. Spica failed to consider the side effects Roe was experiencing from her medications; and

       l.   Dr. Spica's conclusions are inconsistent with the weight of evidence.

## Unum Upheld Its Termination on Appeal

92.    On December 27, 2023, Unum informed Roe by letter of its decision to uphold its termination of long-term disability and waiver of premium benefits under the Plan on review (the "Final Determination").

93.     Unum unreasonably relied on the unsupported opinions of biased, non-examining physicians. These physicians unreasonably found no support for restrictions and limitations inhibiting Roe from performing activities consistent with her occupational demands, contrary to the unanimous conclusions of the medical professionals who have examined her.

94.     The Final Determination is contrary to the preponderance of the evidence, unreasonable and contrary to the substantial evidence submitted by all examining medical professionals including: Dr. Muneses, Dr. Talei, Dr. van Gorp, and therapist Abrams.

95.     Roe exhausted all administrative remedies under the Plan.

## THE MEDICAL EVIDENCE DEMONSTRATES ROE CANNOT MEET THE DEMANDS OF HER OCCUPATION

96.     The weight of the evidence demonstrates that Roe cannot meet the demands of her occupation.

97.     All medical professionals who examined Roe have unanimously concluded that she is disabled from her psychiatric conditions.

98.     Roe was examined by a psychiatrist, a neuropsychologist, an independent psychologist, and a therapist – all of whom concluded that she cannot work.

99.     The examining medical professionals who unanimously concluded Roe cannot work include: psychiatrist Todd Muneses, MD; neuropsychologist Wilfred van Gorp, Ph.D., ABPP; psychologist Bahareh Talei, Psy.D; and therapist James Abrams, MA, LCPC.

Roe's Treating Psychiatrist, Dr. Muneses

100.     Dr. Muneses has been Roe's treating psychiatrist since December 8, 2018.

101.     Dr. Muneses diagnosed Roe with Mixed Bipolar Disorder; PTSD; and adult ADHD.

102.     Dr. Muneses assessed Roe's prognosis to be guarded.

103.     Dr. Muneses continues to see Roe every 1-3 months.

104.     On March 5, 2022, Roe reported depression and low energy to Dr. Muneses.

105.    In a March 26, 2022 narrative letter to the Social Security Administration, Dr. Muneses assessed:

> Patient continue to struggle with mood lability, panic symptoms, low energy, low motivation, poor concentration, and difficulty with sustained focus. All of these symptoms together contribute to her inability to perform tasks that require sustained effort. Because of these symptoms, her ability to problem solve and work easily with others is not possible at this time.

106.    Dr. Muneses assessed in his medical notes July 9, 2022, that Roe has been napping for 2-4 hours per say.

107.    Dr. Muneses evaluated Roe's behavioral observations on the December 7, 2022 Attending Physician Statement as, anxiety, panic attacks, mood swings, erratic sleep, low energy. Dr. Muneses also concluded on the form that there is an anticipation of relapse.

108.    Dr. Muneses' January 19, 2023 narrative letter concluded:

> Roe's clinical profile reveals high levels of anxiety, depressed mood, cognitive complaints, affective instability, identity problems, as well as suicidal ideation (without intent). Roe's severe depression and anxiety have adversely affected her cognitive functioning, affecting her memory, concentration, and speed of processing information. Her symptoms are not well-controlled. Routine social interactions both inside and outside of her work setting remain problematic. Multitasking and focusing would be difficult for her. Given the nature of her condition, it is anticipated that she would have days and weeks that are worse than others on an unpredictable but consistent basis. Based on this evaluation, I do not believe she is capable of meeting the demands of her occupation on a sustained and predictable basis and would likely frequently be absent from work due to the exacerbations of her symptoms. Any improvement Roe has experienced has been minimal and not enough to consider her capable of returning to work on a sustained basis.

> Prognosis continues to be guarded. Further treatment is necessary to help Roe manage her depression and anxiety and to prevent regression.

109.    Dr. Muneses' May 25, 2023 mental status exam of Roe revealed:

    a.    Manner toward examiner: anxious;

    b.    Motor activity: fidgeting;

    c.    Patient's mood: nervous/anxious; and

    d.    Observed affect: anxious.

110.   Dr. Muneses wrote in his letter dated July 6, 2023 that Roe has symptoms of:

   a.   Erratic sleep;

   b.   Long stretches of low energy;

   c.   Low motivation;

   d.   Lack of interest in activities;

   e.   Poor concentration;

   f.   Hopelessness;

   g.   Mood swings;

   h.   Panic attacks;

   i.   Agoraphobia;

   j.   Anxiety;

   k.   Difficulty with focus; and

   l.   Manic episodes.

111.   Dr. Muneses concluded in his July 6, 2023 response that "these deficits prevent her from being able to engage with clients and colleagues, retain information form meetings/calls, and react and respond in a timely and emotionally measured manner."

112.   Dr. Muneses agreed with the results and conclusions of Roe's May 17, 2023 Neuropsychological Evaluation with Dr. van Gorp. Specifically:

   a.   Roe's clinical profile revealed high levels of anxiety, depressed mood, cognitive complaints, affective instability, identity problems, paranoia, and agitation;

   b.   Roe's severe depression and anxiety have adversely affected her cognitive functioning – memory, concentration, and complex sustained attention;

   c.   Routine social interactions both inside and outside of work remain problematic;

   d.   Multi-tasking and focusing would be difficult; and

   e.   Roe will have days and weeks when her symptoms are worse than others.

18

113.    Dr. Muneses concluded from the May 17, 2023 Neuropsychological Evaluation, his own observations, and his understanding of Roe's conditions that he "do[es] not believe [Roe] is capable of meeting the demands of her occupation on a sustained and predicable basis and would likely frequently be absent from work due to exacerbations of her symptoms."

Roe's Treating Therapist, Mr. James Abrams, LCSW

114.    Mr. Abrams has been Roe's therapist since September 16, 2021.

115.    Mr. Abrams treats Roe for Mixed Bipolar Disorder; PTSD; and adult ADHD.

116.    Mr. Abrams assessed Roe's prognosis to be guarded.

117.    Mr. Abrams continues to see Roe on a weekly basis.

118.    In an October 27, 2023 letter, Mr. Abrams wrote it is against his protocol to release notes from patients' individual sessions.  He explained "as this is a safe space for Roe to speak freely, releasing handwritten notes regarding the extremely vulnerable things Roe speaks about during our sessions can sorely undermine the trust and rapport I have built with Roe."

119.    Mr. Abrams explained in a July 17, 2023 treatment summary that Roe's anxiety, depression, lethargy, mania, and panic symptoms have increased.  She reports sleeping between 15-16 hours or 4-5 hours per night, depending on whether she is in an elevated or depressed state.

120.    Mr. Abrams described Roe's elevated states as she often obsesses over online shopping, with difficulty resisting urges, and participation in her writing club (writing 20,000 to 30,000 words in a week).

121.    Mr. Abrams described Roe's depressive states as she reports extreme difficulty in leaving the house, participating in activities, or being able to cook for herself or even eat, she has little interest in life.

122.    Mr. Abrams wrote in his June 27, 2023 narrative that Roe's medications have not made a significant improvement to her condition to date.  Her symptoms remain unpredictable and cause

side effects.  Her medications consist of Wellbutrin, Abilify, Vyvanse, Lexapro, Lamictal, Ativan, and Trazodone.

123.    Mr. Abrams clarified that he is not qualified to interpret the findings but that he agrees with the results of the Neuropsychological Evaluation performed by Dr. van Gorp on May 17, 2023, which revealed Roe experiences increased stress, anxiety, depression, paranoia, and aggression.

124.    Mr. Abrams observed during appointments with Roe that she requires redirection during sessions and has difficulty focusing.  Roe has remained very isolated and expressed little interest in life or socializing with others.

125.    Mr. Abrams explained that in February of 2023, Roe's husband reportedly physically assaulted her, and she fought back, leading to both of them spending several nights in jail, though this has been expunged from both their records.  Mr. Abrams further explained that "this has corresponded with a down swing in her emotional condition, as well as her husband's anger becoming a trigger for episodes of PTSD… this has become a source of great stress in her life and appears to have led to increased severity of all of her difficult emotional states."

126.    Mr. Abrams concluded that "Roe is unable to work in her occupation or any other occupation."  Mr. Abrams explained that Roe's condition, her PTSD, can dysregulate her emotional and physical state, posing the threat of sending her into manic or depressive state.  It is difficult for Roe to regulate after such an episode.

127.    On January 23, 2023[2] Mr. Abrams responded to Dr. Burstein, concluding:

Triggering [Roe's] PTSD can dysregulate her emotional state and physical state. In [Roe's] case, being deregulated in such a way poses the threat of sending her into a manic or depressive state… It is difficult for [Roe] to regulate after such an episode, and she often ends up staying in bed for days, to the detriment of her daily tasks and responsibilities.

---

[2] This letter is mistakenly dated January 23, 2022.  The letter should be dated January 23, 2023 and it was contained in a submission to Unum dated January 24, 2023.

20

Our therapy sessions via video and more often than not, [Roe] attends these sessions from her bed due to her low energy, not for privacy or comfort as Dr. Burstein grossly claims. During our virtual visits I have consistently observed [Roe's] lack of focus, very low energy, timeline confusion, and high anxiety. [Roe] is usually very soft spoken during our sessions and inquires redaction. She remains very isolated and has been unable to socialize with others. She reports sleeping much more than usual, sometimes up to 13 hours in a day.

128.     Mr. Abrams concluded in his Treatment Summary that:

These improvements to [Roe's] ability to safely and successfully manage her life are promising, to be sure, but they are far from complete. She is still easily triggered into manic or depressive states, particularly by activities in her life that mimic work – often mundane tasks such as paperwork, cleaning, driving, or making phone calls. With this in mind, while it is heartening to see her emotional and neurochemical state become more regulated, it is the opinion of this therapist that she is in no condition to return to work.

129.     Mr. Abrams' June 22, 2022 Treatment Summary of Roe concluded that she experiences symptom exacerbation by relational difficulty in her immediate family and when faced with filling out any kind of form she reports being overwhelmed by anxiety and is often unable to complete the task for weeks, if at all.

Neuropsychological Evaluation by Dr. Wilfred van Gorp

130.     Roe underwent a Neuropsychological Evaluation with Dr. van Gorp on December 2, 2020 ("Neuropsychological Evaluation 2020").

131.     Roe underwent a repeat Neuropsychological Evaluation with Dr. van Gorp on May 17, 2023 ("Neuropsychological Evaluation 2023").

132.     Neuropsychological Evaluation 2020 testing was valid and "test findings and observations confirm that [Roe] suffers from bipolar disorder, significant anxiety, and is currently severely depressed.  She exhibits deficits in selective cognitive domains, which are likely associated with her bipolar disorder, anxiety, and possibly, sequelae from COVID-19."

21

133.    Dr. van Gorp concluded in Neuropsychological Evaluation 2020 that "[Roe's] cognitive dysfunction and severe anxiety and bipolar with both severe depression and mania render her unable to work in her occupation, or any similarly demanding occupation."

134.    Neuropsychological Evaluation 2023 testing was valid and Dr. van Gorp concluded:

[Roe] has deteriorated, psychiatrically, since she was last seen, with markedly increased stress, anxiety, depression, suspiciousness, and agitation (aggression). Her cognitive functioning has stabilized since last seen, though she has trouble with complex sustained attention. In this case, the patient's primary challenges are in the psychiatric realm with her unstable condition post-COVID19 and marked increase in symptoms. Her stress level has increased markedly, as have her depression and anxiety, paranoia, and agitation, among others. These symptoms render her even less stable and as a result, confirming the findings reached in the prior assessment that due to her instability, she is unable to sustain employment.

135.    Dr. van Gorp observed the following behavioral observations during Neuropsychological Evaluation 2023:

   a.    Roe joined the telehealth evaluation 20 minutes late due to her phone dying and effects of her sleeping pills;

   b.    Roe needed frequent breaks throughout the day;

   c.    Many of the tasks were visibly difficult for Roe and she breathed deeply, swallowed hard, and cried during those tasks;

   d.    Testing was stressful and anxiety provoking for Roe, and she frequently commented that her cognitive skills were not up to the level that they used to be, a realization that visibly pained her; and

   e.    Roe took a long time (i.e., 10-15 minutes) to complete routine activities such as printing necessary documents for the evaluation.

136.    The results of Neuropsychological Evaluation 2023 revealed:

   a.    Auditory attention and addition – Borderline range (PASAT), 5th percentile;

   b.    Contextual verbal learning and memory, in which she was asked to recall two short stories – Low Average range on immediate recall and in the Low Average range after a 30-minute delay (Logical Memory I and II)[3];

---

[3] These scores are below expectation based on her Superior intelligence.

c. Ability to remember associated word pairs immediately and after a 20-minute delay – immediate recall was in the Average range and her delayed recall was in the High Average range (Verbal Paired Associates I and II)[4];

d. Personality Assessment Inventory (PAI), which provides an objective assessment of her current emotional state – stress level has increased (the Stress scale increased 2.4 standard deviations), anxiety increased (over one standard deviation on the Anxiety scale), Anxiety Related Disorders increased by 1.5 standard deviations, Depression has remained the same at an exceedingly high score, suspiciousness has increased by almost two standard deviations, aggression has increased, and suicidal thinking has lessened somewhat[5]; and

e. BDI-II revealed severe depressed mood (BDI-II = 53/63) and BAI endorsed a severe level of anxiety (34/63)[6].

137.    Based off the results of the Neuropsychological Evaluation 2020 and Neuropsychological Evaluation 2023, which both included extensive psychological testing, together with Dr. van Gorp's review of Roe's medical records and her interview, Dr. van Gorp concluded that her psychiatric condition had worsened since the Neuropsychological Evaluation 2020.  Unum had approved benefits based on prior medical evidence and testing and since then Roe's psychiatric condition has worsened, despite benefits being terminated February 8, 2023.

138.    Dr. van Gorp's October 15, 2023 rebuttal letter further explained that Roe is severely depressed, anxious, paranoid, extremely stressed, interpersonally unstable around others, explodes and loses control, and has ongoing thoughts of suicide.

139.    Dr. van Gorp assessed in the October 15, 2023 rebuttal letter that Roe's engagement in psychiatric and psychotherapeutic treatment is the appropriate thing to do for her.

140.    Dr. van Gorp concluded in his October 15, 2023, rebuttal letter that:

"In my opinion, there is no way this woman could return to work in her prior or any other meaningful occupation at this time.  Through a review of her medical records and the outcome of this evaluation, I can say with a reasonable degree of

---

[4] These scores are slightly lower than her performance on the N1 in 2020.
[5] Dr. van Gorp's October 15, 2023 rebuttal letter explained this remains extremely high at 3.4 standard deviations above the mean, a worrisome elevation.
[6] BDI-II and BAI have increased markedly since NP 1 evaluation.

neuropsychological certainty that the severity of her symptoms and limitations are consistent with [Roe's] level of functioning dating back to February 8, 2023, the date her benefits were wrongly terminated."

Independent Medical Examination with MMPI-3 by Dr. Talei

141.     Roe participated in an independent medical examination with MMPI-3 on October 16, 2023.

142.     "The Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3) is used to screen for personality and psychosocial disorders in adults and adolescents.  It also is frequently administered as part of a neuropsychological test battery to evaluate cognitive functioning.  The MMPI-3 is composed of 335 true/false items.  It can be administered using a printed test booklet and an answer sheet filled in by hand, or by responding to the items on a computer.  When interpreting scores, please note that a T-score of 65 or above is considered to be elevated. . . . Developed with new normative data and based on the most up-to-date police candidate outcome research, this report helps psychologists identify high-risk candidates in an efficient, evidence-based, and legally defensible way." *See* 5/16/2023 IME and MMPI report; *See also* https://www.ncbi.nlm.nih.gov/books/NBK557525/.

143.     Dr. Talei completed a safety assessment due to Roe's reported suicidal ideation.

144.     Dr. Talei listed her behavioral observations of Roe during the examination as her eye contact was fleeting, she appeared fatigued, demonstrated flat affect, she was withdrawn and appeared to have psychomotor slowing.

145.     Dr. Talei concluded Roe's MMPI-3 was valid, producing scorable responses to all the MMPI-3 items and responding relevantly to the items based on their content.

146.     Roe's October 16, 2023 MMPI-3 scores:

| Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3): | | |
|---|:---:|:---:|
| Scale Name | Raw Score | T-Score |
| Cannot Say | 0 | N/A |
| Combined Response Inconsistency (CRIN) | 6 | 51 |
| Variable Response Inconsistency (VRIN) | 4 | 51 |
| True Response Inconsistency (TRIN) | 11 | 60F |
| Infrequent Responses (F) | 9 | 69 |
| Uncommon Virtues (L) | 4 | 52 |
| Adjustment Validity (K) | 5 | 47 |
| Emotional/Internalizinng Dysfunction (EID) | 38 | 86 |
| Thought Dysfunction (THD) | 0 | 37 |
| Behavioral/Externalizing Dysfunction (BXD) | 7 | 50 |
| Demoralization (RCd) | 16 | 77 |
| Somatic Complaints (RC1) | 9 | 65 |
| Low Positive Emotions (RC2) | 14 | 89 |
| Antisocial Behavior (RC4) | 3 | 48 |
| Ideas of Persecution (RC6) | 0 | 40 |
| Dysfunctional Negative Emotions (RC7) | 12 | 61 |
| Aberrant Experiences (RC8) | 2 | 49 |
| Hypomanic Activation (RC9) | 13 | 76 |

147.    Roe's MMPI-3 testing results are elevated, with T-scores well above 65 in:

a.    Emotional/Internalizinng Dysfunction (EID) – 86;

b.    Demoralization (RCd) – 77;

  c. Somatic Complaints (RC1) – 65;

  d. Low Positive Emotions (RC2) – 89; and

  e. Hypomanic Activation (RC9) – 76.

148. Roe's MMPI-3 testing results revealed she reported cognitive difficulties including memory problems, difficulties with attention and concentration, and possible confusion.

149. Roe's MMPI-3 testing results revealed emotional dysfunction including:

  a. Risk of self-harm, preoccupation with suicide and death, and at risk for current suicidal ideation and attempt, exacerbated by poor impulse control;

  b. Considerable and pervasive emotional distress;

  c. Presents with anhedonia, lack of energy, and displays vegetative symptoms of depression; and

  d. Reports of demoralization, feeling overwhelmed, extreme unhappiness, dissatisfaction of life, significant depression, despair, lost hope, hopelessness, lack of confidence, self-doubt, lack of motivation, indecisive and inefficacious, anxiety, excessive worry, nervousness, and various negative emotions.

150. Roe's MMPI-3 testing results revealed behavioral dysfunction including:

  a. Hypomanic activation, such as excitability, impulsivity, and elevated mood;

  b. Restless, becomes bored, and is acutely over-activated as manifested in aggression, mood instability, and excitability – engaging in problematic impulsive behavior;

  c. Likely engages in non-planful behavior and has poor impulse control and a history of hyperactive behavior; and

  d. Manic or hypomanic episodes.

151. Roe's MMPI-3 testing results revealed interpersonal dysfunction including:

  a. Socially introverted, has difficulty forming close relationships, and is emotionally restricted;

  b. Socially inhibited, anxious and nervous in social situations, and viewed by others as socially awkward; and

  c. Reports of not enjoying social events and avoiding social situations, including parties and other events where crowds are likely to gather, difficulty forming close relationships, and is emotionally restricted.

152. Based on the MMPI-3 results, Dr. Talei diagnosed Roe with 296.89 Bipolar II Disorder, 309.81 Posttraumatic Stress Disorder (PTSD), 300.01 Panic Disorder, and 314.00 Attention-Deficit Hyperactivity Disorder, Predominately Inattentive Type.

153. Dr. Talei concluded that "[t]he results of the IME in conjunction with observations and data collected from the clinical interview determined that [Roe] does experience severe affective distress. She is unable to engage in any employment in a consistent manner… Her prognosis is guarded in terms of returning to premorbid level of functioning."

154. Dr. Talei further concluded:

[Roe's] level of functionality continues to be impaired. For instance, she does not consistently attend to her ADLs. In addition, the patient has impairments in sleep, interpersonal relationships, problems with executive functioning (e.g., impulse control, attention), memory, lack of motivation, and chronic stress. Due to her ongoing symptoms, [Roe] is unable to complete a normal workday or workweek. Moreover, due to a history of suicidal ideation and self-harm, increased stress places the patient at risk for these symptoms.

155. Dr. Talei recommended that Roe continue psychiatric, psychotherapeutic intervention, and it may be helpful for Roe to enter a partial hospitalization program (PHP) or intensive outpatient program (IOP).

<u>Roe's Conditions Put Her at Risk of Self-Harm and Suicidal Ideation</u>

156. Dr. Talei noted a history of intermittent suicidal ideation and self-harm with cutting. Dr. Talei concluded from her independent medical exam on October 16, 2023, that "due to a history of suicidal ideation and self-harm, increased stress places the patient at risk for these symptoms."

157. Dr. van Gorp concluded on October 15, 2023 that "[Roe] is disabled from her psychiatric conditions. Indeed, an attempt to return to work would, without question, in my opinion, lead to her symptoms becoming even worse, including her suicidality increasing."

158.     Dr. van Gorp discussed in the May 17, 2023 neuropsychological report that "[Roe] has a history of self-harm (i.e., cutting) in adolescence and in the recent past she engaged in self-harm again… [Roe] has experienced suicidal ideation in the past as well."

159.     Therapist Abrams concluded on October 27, 2023 that he "recommend[s] that [Roe] remain out of work until further notice, as a return to work at this time will likely cause her condition to spiral and put her at risk of self-harm."

160.     On January 19, 2023, Dr. Muneses concluded "[Roe's] clinical profile reveals high levels of anxiety, depressed mood, cognitive complaints, affective instability, identity problems, as well as suicidal ideation (without intent)."

## UNUM'S CONFLICT OF INTEREST

161.     At all relevant times, Unum has been operating under an inherent and structural conflict of interest because, on the one hand, Unum is liable for benefit payments due to Roe and, on the other hand, each payment issued depletes Unum's assets.

162.     Unum's determination was influenced by its conflict of interest.

163.     Unum's conflict of interest extended to and infected its non-examining paper reviewers, Dr. Brown and Dr. Spica.

**Unum's Cozy Relationship with Dr. Peter Brown, MD and Dr. Malcom Spica, PhD.**

164.     Dr. Brown and Dr. Spica are not impartial physicians.

165.     Upon information and belief, Dr. Brown is an in-house medical consultant for Unum.

166.     Upon information and belief, Dr. Spica is an independent contractor hired and/or retained directly by Unum, either directly or through a third-party vendor.

167.     Upon information and belief, Dr. Brown and Dr. Spica have conducted reviews in connection with numerous other individuals insured by Unum.

168.	Multiple Courts have criticized Dr. Brown and Dr. Spica. *See, e.g., Berg v. Unum Life Ins. Co. of Am.*, 2023 WL 2619015, at \*10-12 (E.D. Mich. Mar. 23, 2023); *Dwyer v. Unum Life Ins. Co. of Am.*, 548 F. Supp. 3d 468, 491-492 (E.D. Pa. 2021); *Meyer v. Unum Life Ins. Co. of Am.*, 2021 WL 1102443, at \*23 (C.D. Cal. Mar. 23, 2021); *Twigg v. Reliastar Life Ins. Co.*, 2020 WL 5819547, at \*5, 12 (W.D. Ky. Sept. 11, 2020); *Luu v. First Unum Life Ins. Co. of Am.*, 2019 WL 6622848, at \*11-17 (C.D. Cal. Nov. 14, 2019); *Doe v. Unum Life Ins. Co. of Am.*, 116 F. Supp. 3d 221, 228-30 (S.D.N.Y. 2015); *McDonnell v. First Unum Life Ins. Co.*, 2013 WL 3975941, at \*25 (S.D.N.Y. Aug. 5, 2013).

169.	Unum knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only the interests of insurance companies and never individual claimants.

170.	Upon information and belief, Unum pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for Unum's insureds.

171.	Because the medical consultants derive substantial income from performing file reviews for Unum insureds, the medical consultants have an incentive to provide file reviews that Unum deems favorable in order to perform future file reviews for Unum.

172.	Unum has failed to take active steps to reduce potential bias and to promote accuracy of its benefit determinations.

**UNUM FAILED TO PROVIDE A VALID REASON FOR REJECTING EVIDENCE**

173.	Unum's paper reviewer Dr. Brown improperly dismissed the results of Roe's independent medical examination with MMPI-3 performed by Dr. Talei **on** October 16, 2023, because the evaluation occurred nine (9) months after the termination of benefits on January 5, 2023.

174.	Dr. Brown improperly determined Roe's independent medical examination with MMPI-3, dated October 16, 2023, is not time relevant to the timeframe under review.

175. Multiple Courts concluded that time relevance is not a valid reason for refusing to consider evidence. *See, e.g.*, *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 776 (7th Cir. 2010); *Slupinski v. First Unum Life Ins. Co.*, 2005 WL 2385852, at *8-9 (S.D.N.Y. Sept. 27, 2005), *remanded on other grounds*, 554 F.3d 38 (2d Cir. 2009). This is true where, as here, the conditions remain the same during the appeal process. *See Kaviani v. Reliance Std. Life Ins. Co.*, 373 F. Supp. 3d 1337, 1345 (M.D. Fla. 2019), *aff'd*, 799 F. App'x 753 (11th Cir. 2020).

176. Courts have admonished Unum for its "time-relevant" rationale as recently as 2022 in the Southern District of New York. *See, e.g.*, *Chicco v. First Unum Life Ins. Co.*, 2022 WL 621985, at *4 (S.D.N.Y. Mar. 3, 2022); *see also Luu*, 2019 WL 6622848, at *14; *Slupinski*, 2005 WL 2385852, at *8-9.

177. Unum's rejection of Roe's independent medical examination with MMPI-3, with Dr. Talei, on October 16, 2023, for not being "time relevant" is biased and unreasonable.

178. Unum's termination of Roe's long term disability benefits and waiver of premium was wrongful and without basis in law or fact. The determination to deny benefits was against the substantial weight of the evidence and was arbitrary and capricious. Despite evidence from Roe's treatment providers that explains her psychiatric impairments and how they preclude her from being employed in her own occupation, Unum has refused to acknowledge that Roe is disabled under the terms of the LTD Plan.

## COUNT I (LTD PLAN)

179. Roe repeats and re-alleges the allegations set forth in paragraphs 1 through 178 above.

180. Unum had no legal basis to terminate Roe's benefits under the LTD Plan on January 5, 2023, by letter dated February 8, 2023.

181. Under the terms of the LTD Plan, Unum agreed to provide Roe with certain benefits under such plan, in accordance with the terms and conditions set forth therein.

182.    To date, Unum has failed and refused to provide Roe the benefits under the LTD Plan to which she is rightfully entitled, from date of disability, April 4, 2020, through the Present.

183.    Roe has satisfied all conditions precedent under the LTD Plan Document and is thus eligible to receive benefits beyond the termination date of January 5, 2023.

184.    Unum's determination that Roe is not Disabled within the meaning of the LTD Plan Document is contrary to the terms of the LTD Plan, ERISA, and the DOL Regulations issued thereunder, contrary to the evidence, unreasonable, and arbitrary and capricious.

185.    The unlawful behavior of Unum is evidenced by the following:

a.    Denying benefit payments to Roe when Unum knew that she was entitled to said benefits, in bad faith and contrary to the Plan;

b.    Unreasonably denying and withholding payments from Roe knowing her claim for benefits was valid;

c.    Unreasonably failing to pay benefits without having any evidence, substantial or otherwise, supporting its decision to deny benefits;

d.    Ignoring Roe's treating providers' assessments of her medical conditions and how they restrict and limit her from performing his Occupation, without any basis for doing so in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

e.    Failing to explain the basis for disagreeing with the healthcare professionals treating Roe, in violation of 29 C.F.R. § 2560.503-1(g)(1)(a);

f.    Failing to take into account all comments and documents submitted, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

g.    Failing to consult with a qualified healthcare professional in violation of 29 C.F.R. § 2560.503-1(h)(3)(iii);

h.    Relying on non-examining medical consultants to deny a claim supported by the treating providers and independent medical examiners;

i.    "Cherry-picking" and selectively highlighting certain factors in medical or reviewing reports to cast a favorable light on its position, while ignoring the conclusions of Roe's treating providers regarding the conditions for which they render treatment;

j.  Completely disregarding Roe's subjective complaints, her own assessment of her medical conditions, and how they restrict and limit her from performing the Occupation, in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

k.  Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits, to the detriment of the Plans' participants;

l.  Failing to provide a "full and fair review" as Unum was obligated to do pursuant to 29 C.F.R. § 2560.503-1(h)(4);

m.  Failing to provide Roe with an adequate description of any additional material or information necessary to perfect her claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

n.  Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 C.F.R. § 2560.503-1(b), in violation of ERISA;

o.  Failing to follow its own internal claims administration policies and procedures;

p.  Consistently acting in its own corporate interests instead of those of the Plans and their participants; and

q.  Unum's unlawful behavior and violations of ERISA's procedural regulations were purposeful and harmful to Roe.

186.    Roe has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the Plans and ERISA.

187.    Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Roe is entitled to recover disability benefits under the Plans that have not been paid to date, with interest, and those that will become due in the future.

## COUNT II (Waiver of Premium)

188.    Roe repeats and re-alleges the allegation set forth in paragraphs 1 through 187 above.

189.    Unum had no legal basis for terminating Roe's waiver of premium benefits.

190.    Unum agreed to provide Roe with waiver of premium benefits under the LTD Plan, in accordance with the terms and conditions set forth therein.

191.    To date, Unum has failed and refused to waive the insurance premiums, a benefit to which is Roe is rightfully entitled.

32

192.     Roe has satisfied all conditions precedent under the LTD Plan Document and is thus eligible to receive benefits.

193.     Unum's determination that Roe is not disabled within the meaning of the LTD Plan Document is contrary to the terms of the plan, contrary to the medical evidence, unreasonable, and an abuse of discretion.

194.     Roe has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the LTD Plan and ERISA.

195.     Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Roe is entitled to recover waiver of premium benefits under the LTD Plan Document that have not been paid to date, with interest, and those that will become due in the future.

## COUNT III (ATTORNEY FEES AND COSTS)

196.     Roe repeats and re-alleges the allegations set forth in paragraphs 1 through 195 above.

197.     By reason of Unum's failure to pay Roe's long term disability benefits due under the terms of the Plan, Roe has been forced to retain attorneys to recover such benefits, for which she has and will continue to incur attorney's fees.

198.     Roe is entitled to recover reasonable attorneys' fees and the costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Roe demands judgement against Unum as follows:

A.     For the amount of all long term disability benefits due under the terms of the LTD Plan Document that have not been paid, together with interest thereon;

B.     Clarifying and declaring that the LTD Plan Document is obligated to pay Roe long term disability benefits in the future as required by the LTD Plan;

C.     For the amount of all waivers of premium benefits due under the terms of the LTD Plan Document that have not been paid, together with interest thereon;

33

D.     Clarifying and declaring that the LTD Plan Document is obligated to waive Roe's premiums due in the future as required by the LTD Plan;

E.     For the costs of this action and Roe's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1); and

F.     For such other and further relief as may be deemed just and proper by the Court.

Dated: May 20, 2024

By:     /s/ *Ryan McIntyre*
        Ryan McIntyre, Esq.
        RIEMER HESS LLC
        *Attorneys for Plaintiff*
        275 Madison Avenue, 26th Floor
        New York, NY 10016
        (212) 297-0700
        rmcintyre@riemerhess.com